Dallas A. MARGRAF, H. Patricia
Margraf, Plaintiff,

v.

Larry O. OLIVER, Marlene M. Oliver,
George W. Ledford, Trustee,
Defendants.

In the Matter of Larry O. OLIVER,
Marlene M. Oliver, Debtors.

Bankruptcy No. 3–81–01864.
Adv. No. 3–81–0493.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 24, 1983.

Robert N. Berger, Dayton, Ohio, for debtor.

Roy D. Boucher, Kettering, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, trustee, defendant.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint filed on 3 August 1981 "Objecting to Confirmation of Plan, Objecting to Discharge of Debtors, and to Dismiss Debtors' Chapter 13 Action as Being a Fraud Upon the Plaintiffs." The Court considered the Complaint at a pretrial conference on 16 September 1981, at which time the parties agreed to have the matter set for hearing, and to submit a joint proposed pretrial order prior to the hearing date. The Court prepared to hear the matter on 3 December 1981, but reset the proceeding for a continued pretrial conference because of the parties' failure to submit the agreed pretrial order. The Court held a second pretrial conference on 10 December 1981, at which the parties submitted a proposed pretrial order which the Court approved on 10 February 1982. The parties indicated, however, that some factual issues identified in the pretrial order could likely be resolved and incorporated into the record as uncontroverted fact by a supplemental pretrial order. The parties subsequently submitted a supplemental pretrial order, (formally approved by the Court on 3 February 1983). The Court then set the matter for hearing on 10 March 1982. Upon subsequent request of the parties and with the joint indorsements of counsel for the parties, the Court vacated this trial date and ordered, as requested, that "the Court will decide [the Complaint] on the basis of the pleadings, Pretrial Orders and Supplemental Pretrial Orders as filed herein." The parties subsequently submitted legal briefs. The following decision is, therefore, based upon the parties' briefs and the record, inclusive of the record in Debtors' case file, which is judicially noticed herein.

### FINDINGS OF FACT

Plaintiffs are creditors based upon a prepetition state court judgment issued on 18 February 1981. The judgment had an unpaid balance of $22,844.00 as of the date of Debtors' Petition filing. The parties have stipulated that $18,800.00 of the judgment is unsecured and constitutes 54.3% of the aggregate unsecured debt. The judgment is based upon a unanimous jury verdict in the sum of $15,000.00 for compensatory damages and $10,000.00 for punitive damages resulting from "actual fraud and concealment upon the Plaintiffs." None of the state court record except the Judgment Entry and Order has been made part of the record herein, and none of the factual circumstances (aside from the specific finding

in the Judgment Entry of actual fraud and concealment) are known to this Court.

On 2 July 1981, Debtors filed a Joint Petition in this Court under 11 U.S.C. Chapter 13. Debtors' Plan provides for funding by monthly payments of $300.00 to the Trustee and the deposit of $6,000.00 upon receipt of an account owing Debtors. The Plan essentially provides for payment of secured debt "outside of the plan," and for approximately a 7% distribution to unsecured creditors.

On 20 July 1981, the Court sent notice to all creditors of Debtors' Petition and proposed Plan. The Notice included notification of a hearing on confirmation of Debtors' proposed Plan set for 4 August 1981. The Notice also provided that, "Complaints objecting to confirmation shall be filed with the Clerk of this Court and a copy served by the Creditor upon the Debtors' attorney and the Chapter 13 Trustee at least five –5– before the confirmation hearing."

On 3 August 1981, Plaintiffs filed the instant Complaint essentially objecting to confirmation of Debtors' proposed Plan. Plaintiffs contend that the Petition filing itself is a "horrendous fraud" upon Plaintiffs, designed for the sole purpose of "thwarting justice" by discharging under the broad discharge provision of Chapter 13 otherwise nondischargeable debt. Plaintiffs further contend that the Plan itself is accordingly violative of the good faith requirement of 11 U.S.C. § 1325(a)(3). In the alternative, Plaintiffs argue that, since the instant debt would be nondischargeable under 11 U.S.C. Chapter 7, Plaintiffs are not receiving an amount equal to the amount they would have received had Debtors filed under 11 U.S.C. Chapter 7, and, thus, that Plan confirmation should be denied on the basis of the "best interest test" in 11 U.S.C. § 1325(a)(4). In addition, Plaintiffs contend that Debtor Larry O. Oliver's self-employment as a real estate salesman does not provide "regular income" (as required by 11 U.S.C. § 109(e)) sufficient to support a finding by the Court that "debtor will be able to make all payments under the plan," without which confirmation should be denied. Plaintiffs' final argument is that confirmation of the instant Plan would be "blatantly unconstitutional as a denial to the Plaintiffs of equal protection of the laws under the 14th Amendment to the Constitution of the United States. . . ."

Debtors initially respond that the instant Complaint should be dismissed as untimely, citing this Court's Notice dated 20 July 1981. In the alternative, Debtors respond that they possess no bad faith intent or purpose in either their Chapter 13 filing or their proposed Plan. Debtors contend that they are merely acting in good faith to restructure their debt into manageable payments. In addition, Debtors dispute Plaintiffs' interpretation of 11 U.S.C. § 1325(a)(4), and allege that the proposed Plan fully satisfies the "best interest test" therein.

In response to Debtors' request to dismiss the instant Complaint on the basis that it was untimely filed, Plaintiffs have alleged a good faith attempt to comply with the Court's procedure. Plaintiffs further argue that they have, in fact, substantially complied with the Court's deadline. Plaintiffs' argument is presented in the form of an affidavit by Plaintiff Dallas A. Margraf, as follows:

Dallas A. Margraf, being first duly cautioned and sworn, says that, to the best of his knowledge and belief, he is unable to recall, at this time, exactly on what day he received the notice of the confirmation hearing in this case, but he does recall that he and his attorney were unable to complete the draft of his Complaint until the morning of the day before the confirmation hearing, said Complaint consisting of four pages, single spaced, and it was physically impossible to get the Complaint filed of record at the Clerk's Office until the afternoon of August 3, 1981, and your Affiant recalls, further, being advised by [his attorney] that copies of the Complaint were handed [to the Trustee and Debtors' attorney] on the morning of August 4, 1981, before the hearing took place; and your Affiant swears, further, that had he known that some Complaint

objecting to the Confirmation of the Chapter 13 Plan in this case had to be filed at least 5 days before the Confirmation hearing he would have at least attempted to do every thing necessary to comply with such notice, since the principal claim of your Affiant, and his wife, is that they have a judgment for actual fraud against the Debtors in this case and under the Plan will receive far less than the amount of the unpaid balance of their claim, and, further, their claim represents far more than ½ of the total of the Debtors' unsecured claims, and, therefore, your Affiant had absolutely no disincentive for late filing, and had a very strong incentive for filing as fast as possible, which his lawyer did.

Debtors also disagree with Plaintiffs' allegation that Debtors do not qualify for Chapter 13 because of a lack of "regular income." Debtors point out that it is stipulated that Debtor Marlene M. Oliver has a regular income from her employment as a bank teller, and that the only issue is in regard to Mr. Oliver's income. In this regard, Debtors have submitted (jointly with the indorsement of Plaintiffs' counsel) an "Earnings Record" which itemizes Mr. Oliver's monthly aggregate sales commissions for July, 1981 through February, 1982, as follows:

| July, 1981 | — | $5,041.71 |
| August, 1981 | — | 621.15 |
| September, 1981 | — | 1,534.48 |
| January, 1982 | — | 1,890.00 |
| February, 1982 | — | 1,841.00 |

The Court also notes that Debtors' Schedules indicate that Mr. Oliver's income in 1980 was $23,037.00, and that Debtors' Interim Chapter 13 payments are current to date.

## DECISION AND ORDER

### I

The threshold question before the Court is whether Plaintiffs' Complaint was timely filed for the purpose of decision herein. Local court practice, of which Plaintiffs were duly notified, provides that complaints objecting to confirmation of a Chapter 13 plan should be filed at least five days before the hearing on confirmation of the questioned plan. In this case, Plaintiffs filed the day before the hearing on confirmation of Debtors' Plan.

It is the opinion of the Court, however, that the court-imposed deadline for filing of complaints objecting to confirmation of a Chapter 13 plan may, within the discretion of the Court, be extended if the plan has not been confirmed and if the Court finds either that the failure to file was caused by excusable neglect or that such extension is necessary in the interest of justice. Bankruptcy Rules of Procedure 404(a) and (c), and 906(b). Note also 11 U.S.C. § 1330(a). In this case, Plaintiffs explanation for their late filing appears to be reasonable. Plaintiffs appear to have exerted their best effort to comply, and have in fact substantially complied, with the Court deadline. It is the determination of the Court that Plaintiffs' failure to comply with the Court's deadline should be deemed excusable neglect, and that the Court should entertain the instant Complaint in the interest of justice.

### II

The next basic issue before the Court is whether Debtors qualify for relief under 11 U.S.C. Chapter 13. It is the determination of the Court that the instant Debtors do, in fact, qualify as Chapter 13 debtors.

### A

The parties dispute whether Debtors possess a "regular income," a requisite for a Chapter 13 filing. 11 U.S.C. § 109(e). An "individual with a regular income" is defined within the Code as an "... individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13 of this title...." 11 U.S.C. § 101(24).

It is the finding of the Court that Debtors possess a regular income for purposes of a Chapter 13 filing. The Code requires that a Chapter 13 debtor be an

individual with a regular income because such income becomes property of the estate, and permits the debtor to accomplish the ultimate goal of Chapter 13, that being the distribution of a larger dividend to creditors than would have been possible had the debtor liquidated under 11 U.S.C. Chapter 7. 11 U.S.C. §§ 541 and 1306; See also discussion in this Court's opinion in *Ledford v. McCormick*, 27 B.R. 434 (1983). The practical test of the sufficiency and regularity of a Chapter 13 debtor's income should be whether the debtor is "able to make all payments" and "comply with" a plan capable of confirmation under 11 U.S.C. § 1325. 11 U.S.C. §§ 101(24) and 1325(a)(6). In this case, Debtors' income, though subject to fluctuation, appears sufficiently regular and substantial "to enable [Debtors] to make payments under a plan under Chapter 13 of this title." 11 U.S.C. § 101(24). In this regard, the Court notes that Debtors' interim payments to the Trustee are current.

## B

Plaintiffs allege that Debtors' Chapter 13 Petition is itself a "horrendous fraud," and should be dismissed for a lack of good faith. It is the opinion of the Court, however, that a debtor may in good faith file for relief in bankruptcy for the purpose of Chapter 13 administration of debt which, in a different context, might have been incurred by some type of "bad faith" conduct by the debtor. Note the limited criteria of 11 U.S.C. § 1307(c). In other words, a debtor may in good faith restructure debt which was incurred by prepetition bad faith conduct. The nature of the debt itself cannot preclude a Chapter 13 filing, unless the debt was fraudulently incurred without any intention of repayment because of an anticipated abuse of the Chapter 13 process. 11 U.S.C. §§ 1307(c)(4) and (6), 1325(a)(3), and 1330(a); Note also this Court's opinion in *Turpin v. Maupin*, 26 B.R. 987 (1983), and citation therein. As will be discussed, the Court notes that the finding that a debtor qualifies for relief under Chapter 13 despite debt incurred by prepetition bad faith conduct, does not resolve the question of that debtor's good faith in regard to specific plan proposals.

## III

The final question in the instant case is whether the Court should deny confirmation of Debtors' proposed Plan. It is the determination of the Court that confirmation of Debtors' Plan, as proposed, should be denied.

## A

Plaintiffs' object to confirmation of Debtors' proposed Plan on the basis of 11 U.S.C. § 1325(a)(4), which requires that a Chapter 13 plan propose payment to unsecured creditors of an amount at least equal to the amount which would be distributed under 11 U.S.C. Chapter 7. Plaintiffs argue that the subject debt would be nondischargeable under 11 U.S.C. Chapter 7 and, therefore, that Debtors' proposed Plan proposes payment of an amount "less than the amount that would be paid on such claim if [Debtors] estate were liquidated under [11 U.S.C. Chapter 7]. . . ."

As earlier decided by the Court, however, . . . [A]bsent evidence of demonstrated bad faith, the nondischargeability of a debt under 11 U.S.C. § 523 is, as a general rule, wholly unrelated to the confirmability of a Plan under 11 U.S.C. § 1325. 11 U.S.C. § 1325(a)(4) provides that a Chapter 13 plan must provide for payment to unsecured creditors of at least an amount equal to what would be paid had the debtor filed under Chapter 7. The fact of nondischargeability under 11 U.S.C. § 523, however, is irrelevant to the calculation of the amount of "payment *under Chapter 7*" as calculated in 11 U.S.C. § 1325(a)(4), which instead looks only to payment accomplished under the direct auspices of Chapter 7 administration without regard to a speculative right to payment which might arguably survive Chapter 7. It is not the

purpose of 11 U.S.C. § 1325(a)(4) to litigate the dischargeability of a debt under the terms of 11 U.S.C. § 523 within the context of a Chapter 13 proceeding. Such interpretation would be inconsistent with the literal meaning of the statute and the statutory provision providing a separate text for discharge in Chapter 13 cases. 11 U.S.C. § 1328. Had Congress intended to incorporate the concerns of 11 U.S.C. § 523 into the Chapter 13 process, such incorporation would have been explicit. *State of Ohio, Ohio Student Loan Commission v. Willis,* 24 B.R. 293, 9 B.C.D. 1252 (Bkrtcy.Ohio 1982). In short, the issue of the dischargeability of the subject debt is not before the Court.

### B

■ Plaintiffs contend that confirmation of the subject Plan would be violative of Plaintiffs' rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. It is the opinion of the Court, however, that this argument should be summarily dismissed. To begin with, the Fourteenth Amendment, by its own terms, is directly applicable only to state conduct. See this Court's opinion in *Matter of Conley,* 17 B.R. 387, 390 (Bkrtcy. Ohio 1982), and citation therein. Instead, application of the equal protection tests developed under the Fourteenth Amendment directly to federal legislation should be by incorporation into the Fifth Amendment due process clause. *Matter of Conley, supra.*

■ It is the determination of the Court that Plaintiffs have not established even a *prima facie* case to sustain a finding that 11 U.S.C. § 1325 is violative of the Fifth Amendment. Plaintiffs only casually and briefly raise the issue, and have not alleged any of the elements of an equal protection violation. Specifically, Plaintiffs have not alleged inclusion in any class, nor have Plaintiffs even identified a discriminated class. Any decision by the Court of the constitutional issues raised herein would be hypothetical; and this Court is of the opin-

ion that, without more, such alleged constitutional deprivation should not be entertained unless seriously litigated by the parties or a blatant violation. In this case, Plaintiffs argument of a Fifth Amendment violation appears to be frivolous.

### C

The question which remains is whether confirmation of Debtors' proposed Plan should be denied on the basis of 11 U.S.C. § 1325(a)(3), which requires that a plan be proposed in good faith. The Court reiterates that this question is distinct from the previously discussed issue of the good faith of the act of the Petition filing itself.

In this case, the circumstances resulting in the subject debt are unknown to the Court, and there is clearly insufficient evidence as to the nature of the alleged fraud to enable a finding of dishonesty. Note this Court's decision in *Matter of Sneed,* 13 B.R. 151 (Bkrtcy.Ohio, 1981). It is the opinion of the Court, however, that the prepetition state court judgment based upon a jury finding of actual fraud and concealment may be interpreted as *res judicata* of the issue of "questionable conduct," as discussed in the Sixth Circuit's opinion of *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982). In *Memphis Bank and Trust Co. v. Whitman,* the Sixth Circuit indicated that bankruptcy courts have considerable discretion to avoid apparent abuses of the Chapter 13 process. The legal standard enunciated by the Sixth Circuit was "questionable conduct," as follows:

The "good faith" requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan.... The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. See

**426**

e.g., *Matter of Kull,* 12 B.R. 654, 659 (D.C.S.D.Ga 1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors").

One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless Courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.

Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract.

In this case, although the meagre record does not mention "dishonest conduct," the state court judgment itself is indicative of prepetition conduct which was "questionable." In this regard, the Court emphasizes the extreme nature of the facts of this proceeding compared to usual Chapter 13 cases. Debtors herein propose the continued payment of considerable secured indebtedness (in particular, $115,000.00 of secured debt on Plaintiffs' residence) while proposing only a 7% distribution to unsecured claims. In light of the fact that a large proportion of the unsecured debt is sounding in adjudicated fraud, it is the opinion of the Court that the questionable conduct resulting in the subject debt justifies the Court requiring full payment of the subject debt, in accordance with the guidance of the Sixth Circuit in *Memphis Bank and Trust Co. v. Whitman.* Such a conclusion thus requiring a more substantial distribution to the unsecured debt does not constitute a judicial determination that the debt would be nondischargeable in a Chapter 7 administration. The facts *sub judice* are not complete enough for such a conclusion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that confirmation of Debtors' proposed Chapter 13 Plan is DENIED.

IT IS FURTHER ORDERED, however, that Debtors are GRANTED two weeks LEAVE to amend their Plan conformably with the above reasoning.