**In re Michael Lynn MANES and Sabrina Gale Manes, Debtors.**

**Bankruptcy No. PB 85–330M.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

June 25, 1986.

Thurman Ragar, Jr., Pine Bluff, Ark., for debtors.

Lisa Kelly, Pine Bluff, Ark., for Harvey Jones.

A.L. Tenney, Little Rock, Ark., Trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On December 16, 1985, a hearing was held on the confirmation of the debtors' proposed chapter 13 plan. An objection was filed by Mr. Harvey Jones which alleged that the proposed plan was not feasible and was not filed in good faith.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The following constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule of Procedure 7052.

Mr. Michael Manes (Manes), one of the debtors, was formerly employed at the Arkansas State Penitentiary, Maximum Security Unit, as a field lieutenant in charge of the hoe squad. The objecting creditor, Mr. Harvey Jones (Jones), was an inmate in the maximum security unit on May 9, 1984. On that date, Jones was called out of the hoe line by Manes who, along with a field sergeant, proceeded to handcuff Jones, place him in the back of a pickup and carry him to the firing range where Jones was led behind grass covered mounds. Manes and company proceeded to beat Jones with a club on Jones' legs, arms and shoulders while Jones was face down on the ground. The uncontradicted testimony was that Manes was laughing during the beating. At one point, Jones tried to run back to the unit when he was ordered to "nigger halt" at gun point. Jones returned to the mounds where he was again beaten and kicked. Jones was not allowed to seek medical help at the infirmary. He was returned to work, but was unable to work because of the pain. Manes called Jones back off the work line because Jones was crying profusely. Jones was again handcuffed, driven around and ordered to stop crying or else he would be given something to cry about. Jones was taken back to the hoe line and again could not work because of the severe pain. At lunch time Jones was allowed to visit a doctor. These events led to a trial before the Honorable Henry Woods and the entry of an order which awarded a judgment of $2,500 compensatory damages and $1,000 punitive damages, plus costs and attorney's fees in favor of Hon. Lisa Kelly for $8,808.[1]

On October 11, 1985, Manes and wife jointly filed a voluntary chapter 13 petition. Manes submitted a plan which proposes to pay $85.00 per week or $340.00 per month to the trustee. The plan proposes to run for thirty-six months. Approximately $25.00 per month will be paid to the unsecured creditors whose claims total $15,-678.20. Over the life of the plan, approximately $900.00 will be available to be shared pro rata among the unsecured creditors.

Jones objects to the proposed plan on the basis that the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3) provides in pertinent part that the court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law.

This Court is bound by the decision of *In re Estus*, 695 F.2d 311, 313 (8th Cir.1982), which states "that subsection (a)(3) good faith does not impose a rigid and unyielding requirement of substantial payment to unsecured creditors. A per se minimum payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of chapter 13 and is unwarranted." (footnotes omitted). *Estus* proceeds further to challenge the bankruptcy court to more narrowly define the concept of good faith

---

1. The judgment was also entered against the Arkansas Department of Corrections but was ultimately vacated, placing the burden of the judgment entirely on Manes.

by a "separate, independent determination" of the facts of every good faith case. *Estus* adopted the Fourth Circuit standard of review of good faith by inquiring "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13.... If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied." *Estus* enumerated eleven non-exclusive factors which are relevant when considering whether a plan has been proposed in bad faith. Included in the eleven factors are the following:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the probable or expected duration of the plan;

(3) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(4) the existence of special circumstances such as inordinate medical expenses; and

(5) the motivation and sincerity of the debtor in seeking Chapter 13 relief.

Jones suggests as evidence of bad faith the fact that Manes filed bankruptcy merely to avoid a writ of garnishment issued by Jones. Jones contends the degree of the nondischargeable nature of the debt should be considered before confirming the plan. In addition, Jones questions the sincerity of the debtor and offers as support for this contention the fact that Manes was laughing throughout the hearing before Judge Woods. This Court observed that Manes was also grinning inappropriately throughout the confirmation hearing before the bankruptcy court.

Chapter 13 allows debtors to discharge obligations which would otherwise not be dischargeable in chapter 7. Jones seeks to elevate the prepetition bad faith conduct of the debtor to an objection to the dischargeability of a debt pursuant to 11 U.S.C. § 523. Section 1325 was never intended to accomplish what 11 U.S.C. § 523 or § 727 was designed to do. *Margraf v. Oliver*, 28

B.R. 420 (Bkrtcy.S.D.Ohio 1983). The *Margraf* court stated that:

A debtor may in good faith file for relief in bankruptcy for the purposes of chapter 13 administration of debt which, in a different context, might have been incurred by some type of 'bad faith' conduct by the debtor. Note the limited criteria of 11 U.S.C. § 1307(c). In other words, a debtor may in good faith restructure a debt which was incurred by prepetition bad faith conduct. The nature of the debt itself cannot preclude the confirmation of a Chapter 13 under a theory of bad faith unless the debt was fraudulently incurred without any intention of repayment because of an anticipated abuse of the Chapter 13 process. 28 B.R. at 424.

Although Manes engaged in malicious activity prepetition, his conduct is not the *Margraf* type conduct, the fraudulent incurrence of a debt without repayment intentions. *See also Matter of Wright*, 36 B.R. 663, 665 (Bkrtcy.S.D.Ohio 1984).

The Sixth Circuit interprets the good faith requirement of 1325(a) in light of the structure and general purpose of chapter 13. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). Noting that chapter 13 is subject to abuse, the Sixth Circuit refused to allow a debtor to carry out a decisive scheme to secure property and "thwart the statutory policy denying discharge in chapter 7 cases for dishonesty." *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d at 432.

The facts in this case do not rise to the level of fraud or dishonesty in procuring the debt. There is no proof that the debt was incurred in anticipation of the filing of chapter 13. Debts resulting from illegal acts such as willful and malicious injury are simply allowed to be discharged under chapter 13. *In re Chase*, 43 B.R. 739, 743 (D.Md.1984).

Although the plan only proposes to pay approximately six percent of the unsecured claims, the schedules indicate that

this is the most the debtors can afford to pay. There is insufficient evidence to conclude that the debtors' plan is a plan not to pay a single debt which is nondischargeable in a chapter 7 case. *See In re Williams,* 42 B.R. 474 (Bkrtcy.E.D.Ark. 1984). The debtors have a bona fide need for relief under Title 11. In a chapter 7 liquidation, unsecured creditors would receive no distribution. The debtors' income and expenses are in modest amounts. Although the debtors are ill-mannered and Manes is guilty of reprehensible prepetition conduct, the plan is proposed in good faith within the meaning of chapter 13.

■ Turning to the remaining objection raised by Jones, the Court must consider whether the proposed plan is feasible. The statement of income and expenses reflects that the debtors' total monthly income is $1,283.42. The total monthly expenses are $951, and the amount of plan payment is $340, totalling $1,291. The debtors' expenses and plan payment exceed the disposable monthly income by $7.58. The monthly family budget is not feasible based upon the debtors' own report.

In addition, Manes testified that both he and his wife had lost their jobs at the time of the confirmation hearing. The debtors expressed hope that they would acquire jobs and have regular income sufficient to fund the plan. Chapter 13 requires that the debtor have a regular income to fund a chapter 13 plan. Since the debtors were without income as of December 16, 1985, the plan is not feasible and therefore, not confirmable.

The debtors are given twenty days from the entry of this memorandum opinion and order of this same date to modify their chapter 13 plan to come within the requirements of feasibility or to convert the case to one under chapter 7 or to dismiss this case. If no action is taken within twenty days, the case will be automatically dismissed.

IT IS SO ORDERED.