**In re Michael KOURTAKIS, Debtor.**

**Bankruptcy No. 87–00796–R.**

United States Bankruptcy Court, E.D. Michigan.

June 25, 1987.

Arnold Schafer, Birmingham, Mich., for debtor.

Michael McCulloch, Royal Oak, Mich., for creditor.

## SUPPLEMENTAL MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

The debtor, Michael Kourtakis, has proposed a Chapter 13 plan, and a creditor, Mark Boff, has objected to its confirmation,[1] on the grounds that the plan is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). Boff has filed a claim in the amount of $38,959.50 plus 13% interest from December 10, 1986, as a result of an assault and battery judgment entered in his favor against Kourtakis in the state district court.

Kourtakis filed a response to the objection, contending that the plan was proposed in good faith.

11 U.S.C. § 1325(a)(3) provides in pertinent part:

The court shall confirm a plan if the plan has been proposed in good faith.

The petition and schedules show only one creditor other than Boff; this creditor is owed approximately $560.

The plan proposes to pay $259.27 per month for 36 months. In addition, the plan proposes to apply to the plan all state and federal income tax refunds received during the term of the plan and to make the tax returns available for examination so that a determination can be made whether to file a motion to modify the plan.

The Court held a hearing on the issue of whether the plan has been proposed in

1. This supplemental memorandum opinion supplements a decision given in open court at the conclusion of the hearing on June 11, 1987.

good faith and Kourtakis testified. From the hearing, it is clear that the debt owed to Boff would be nondischargeable under Chapter 7 pursuant to 11 U.S.C. § 523(a)(6), as a debt for a willful and malicious injury. Kourtakis's conduct amounted to an unprovoked and unmitigated assault and battery, resulting in both a criminal conviction and a civil judgment, both of which would no doubt preclude any further litigation on the issue of intent. The testimony consisted largely of an explanation of the circumstances leading to the assault and then a review of the income and the expenses. The thrust of the testimony was that Kourtakis is in fact applying all of his projected disposable income over the three year period of the plan as required by § 1325(b).

Upon questioning by the Court, Kourtakis indicated a hesitancy to propose a five year plan for essentially three reasons. First, he wanted to get this part of his life over with as soon as possible so that he could begin to think about a family. Second, he was not sure what his future employment might be and he wanted the future left open for that purpose. Third, he felt that Boff was getting paid quite a bit of money in the three years for what happened. During his testimony, Kourtakis requested an opportunity to discuss this latter issue further with his attorney; this was permitted but nevertheless Kourtakis decided not to extend the length of his plan.

Boff primarily contends that the plan is not proposed in good faith because it seeks the discharge of a debt which would plainly be nondischargeable in Chapter 7. Boff also notes that the plan is only three years, although it could be five years under § 1322(c). Finally, Boff has expressed some concerns about whether all of the debtor's projected disposable income will be applied to the plan as required by § 1325(b).

In support of his position that the plan has not been proposed in good faith, Boff primarily relies upon four cases: *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982); *In re Chase,* 43 B.R. 739 (D.Md.1984); *In re Brock,* 47 B.R. 167 (Bankr.S.D.Cal.1985); and *In re Sotter,* 28 B.R. 201 (Bankr.S.D.N.Y.1983). As a group these cases arguably hold that a debt incurred in a criminal act cannot be discharged in Chapter 13 and that a Chapter 13 plan which results in such a discharge is not proposed in good faith.

In support of his position that his plan has been proposed in good faith, Kourtakis contends that the cases cited by Boff are distinguishable and that the greater weight of authority holds that the dischargeability of the debt in Chapter 7 is only one of several factors to be considered in determining whether a debtor's plan has been proposed in good faith. Kourtakis cites *In re Slade (Bank of America National Trust and Savings Assoc. v. Slade),* 15 B.R. 910 (9th Cir. BAP 1981) and *In re Estus (United States v. Estus),* 695 F.2d 311 (8th Cir.1982). Thus, Kourtakis argues that the nondischargeability of this debt in Chapter 7 does not by itself preclude its dischargeability in Chapter 13 under 11 U.S.C. § 1328, citing *In re DeSimone,* 25 B.R. 728 (E.D.Pa.1982), and *In re Seely (Johnson v. Seely),* 6 B.R. 309 (Bankr.E.D. Va.1980).

## II.

Initially, the Court concludes that the plan does propose to apply all of Kourtakis's projected disposable income over the three year period of the plan and that Boff's specific concerns regarding the possibility of additional income and the lack of support for certain expense items lack merit. The Court is satisfied that the amended budget is a reasonably accurate projection of the projected disposable income. In this regard, the Court notes that the pertinent information regarding Kourtakis's income during the relevant period of the plan will be made available so that Boff can file a motion to modify the plan if appropriate pursuant to 11 U.S.C. § 1329.

Thus, the issue is whether this plan has been proposed in good faith given that the debtor will apply all projected disposable income over three years, but given that the primary debt involved resulted from a criminal assault.

186

In *Memphis Bank & Trust v. Whitman*, 692 F.2d at 431–32, the court held:

The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g., Matter of Kull*, 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are 'the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.')

One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation of the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.

Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract.

Boff contends that *Memphis Bank* requires this Court to deny confirmation.

Kourtakis contends that *Memphis Bank* is distinguishable on the grounds that whereas there the debtor's honesty was called into question, here there is no doubt about the debtor's honesty.

The Court concludes that the true holding of *Memphis Bank* is that the bankruptcy court must exercise its discretion in determining whether the debtor's proposed repayment of the nondischargeable debt fits the facts and circumstances of the case, consistent with equity, good conscience, and the goals of Chapter 13. This Court so held in *In re Harkai*, 68 B.R. 990, 993 (Bankr.E.D.Mich.1987). To the same effect is *In re Oliver* (*Margraf v. Oliver*), 28 B.R. 420, 425–26 (Bankr.S.D.Ohio 1983):

... the Sixth Circuit indicated that bankruptcy courts have considerable discretion to avoid apparent abuses of the Chapter 13 process.

*See also In re Manes*, 67 B.R. 13, 15 (Bankr.E.D.Ark.1986).

■ Therefore, unless the Chapter 13 filing is shown to be part of a scheme to defraud, the mere fact that the debtor's primary debt is nondischargeable in Chapter 7 does not by itself preclude Chapter 13 relief. Congress could easily have provided for the Chapter 13 nondischargeability of debts incurred by fraud or by willful and malicious injury, but it did not. Significantly, Congress did provide for the Chapter 13 nondischargeability of two other kinds of debts. *See* 11 U.S.C. § 1328(a). This Court cannot and will not infer or create any additional classes of nondischargeable debt in Chapter 13. *See In re Seely* (*Johnson v. Seely*), 6 B.R. 309 (Bankr.E.D.Va.1980), and *In re DeSimone*, 25 B.R. 728 (E.D.Pa.1982). Thus this Court rejects the cases relied upon by Boff: *In re Brock*, 47 B.R. 167 (Bankr.S.D.Cal.1985), and *In re Sotter*, 28 B.R. 201 (Bankr.S.D. N.Y.1983).

■ The Court agrees with Kourtakis's contention that the great weight of authority holds that the existence of a nondischargeable debt is only one factor to be considered in determining the good faith issue. The cases indicate that the Court

must examine the totality of the circumstances. *Public Finance Corp. v. Freeman*, 712 F.2d 219 (5th Cir.1983); *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983); *In re Kitchens* (*Kitchens v. Georgia Railroad Bank and Trust Co.*), 702 F.2d 885 (11th Cir.1983); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982); *In re Rimgale* (*Ravenot v. Rimgale*), 669 F.2d 426 (7th Cir. 1982); *In re Estus* (*United States v. Estus*), 695 F.2d 311 (8th Cir.1982); and *In re Goeb* (*Goeb v. Heid*), 675 F.2d 1386 (9th Cir.1982).

■ Broadly speaking, the inquiry involves two related questions: First, whether under the circumstances of the case, there has been an abuse of the provisions, purpose, or spirit of Chapter 13, *In re Terry* (*Tenney v. Terry*), 630 F.2d 634, 635 (8th Cir.1980); *Rimgale; Estus; Kitchens;* and *Deans;* second, whether the debtor has the requisite honesty of intention, *Goeb; In re Johnson* (*Johnson v. Vanguard Holding Corp.*), 708 F.2d 865 (2d Cir.1983); and *In re Barnes* (*Barnes v. Whalen*), 689 F.2d 193, 200 (D.C.Cir.1982).

It is true that most of these cases address the good faith requirement in the context of a plan that proposes little or no repayment to creditors, rather than in the context presently before the Court, and it is also true that the 1984 amendments to 11 U.S.C. § 1325(b), relating to the debtor's best efforts, largely resolves the issue addressed in these prior cases. Nevertheless, the underlying propositions in those cases—first that no single factor is conclusive, second that the court must look to the totality of the circumstances, and third that the true issues are whether there is an abuse of Chapter 13 and whether the debtor's intentions are honest—must guide this Court in resolving the present case.

Boff relies upon *In re Chase*, 43 B.R. 739 (D.Md.1984). There, the debtor had a $25,-000 consent judgment for sexual assault on a minor. The court recognized that a debt resulting from a malicious injury can be discharged in Chapter 13. Nevertheless, the court held that the debtor's Chapter 13 plan was proposed in bad faith primarily because the court found that the debtor

entered into the consent judgment without any intent to pay it. The court would not allow the debtor to profit from that wrong using Chapter 13. Thus, it is clear that the note sounded in the *Chase* case was essentially the same note sounded in the *Memphis Bank* case.

Here however, there is no indication that the debtor intended to file bankruptcy as part of a pre-conceived plan to defraud his creditors or this creditor in particular. Thus, this case is more like *In re Manes*, 67 B.R. 13 (Bankr.E.D.Ark.1986) which involved a judgment against the debtor for malicious injury he caused to a prisoner while the debtor was a prison guard. The court held that such a debt was dischargeable in Chapter 13 where it was not incurred without the intention to repay.

Kourtakis properly relies upon *In re Slade*, above. There, the court held that an embezzlement debt would be dischargeable in Chapter 13, primarily because in that case the Chapter 13 plan was the debtor's best effort.

On the other hand, in *In re Williams*, 42 B.R. 474 (Bankr.E.D.Ark.1984), the court denied confirmation of a Chapter 13 plan involving student loans which would be nondischargeable in Chapter 7, in part because the debtor was not putting forth his best efforts in that the plan was for 36 months, not 60 months.

■ It is true that there is no legal obligation to propose a 60 month plan, *In re Vensel*, 39 B.R. 866 (Bankr.E.D.Va.1984), but it must be held that the length of the plan is a relevant consideration because it reflects the debtor's state of mind and intentions, as well as the amount of repayment to the creditors.

### III.

■ Thus it is left to consider in this case the pertinent facts. First, this nondischargeable debt arose from a willful and malicious injury.

Second, the conduct in causing this injury was criminal.

Third, although Kourtakis has some remorse, it is apparent from his testimony

that the remorse is not complete by any means.

Fourth, the 36 month plan proposes to pay creditors approximately 24% plus whatever tax refunds are received in the three years of the plan, and proposes to allow inspection of the tax returns so that a determination can be made whether more disposable income is available for the plan.

Fifth, Kourtakis is a young man starting out his career, honestly looking to get settled and to put this aspect of his life behind him. In other words, he is looking for a fresh start.

Sixth, Kourtakis believes that 24% of the civil judgment is quite a bit of money for what happened.

Seventh, in a five year plan, the percentage dividend to creditors would increase to approximately 40%. More concretely, the amount paid to creditors would increase from approximately $10,000 to approximately $16,000.

The Court concludes on balance that this plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). The Court further concludes that Kourtakis has not demonstrated the requisite honesty of intentions in proposing this plan, given the violent nature of the criminal act involved. Kourtakis has apparently concluded on his own that a three year plan is enough for Boff, given what happened. This Court will not allow Kourtakis to reform the jury verdict in this bankruptcy. Clearly, Kourtakis does not accept the full measure of the verdict against him and has filed this bankruptcy in substantial part to effect a reduction of the verdict. Kourtakis's intentions in this regard are thus not entirely honest.

Further evidence of Kourtakis's intentions lies in his refusal to propose a five year plan, although within his power. Clearly, if Kourtakis were fully honest, and fully and sincerely remorseful, he would propose to pay his creditors according to his best efforts and within the full period allowed by the law. Apparently he has decided that three years is enough for Boff, given what happened, and that is it.

In the circumstances, the Court does not find the necessary honesty of intentions on Kourtakis's part. The Court finds that his intention to reduce the jury verdict to some amount he deems more appropriate is an abuse of the spirit of the Bankruptcy Code, and that therefore the plan has not been proposed in good faith.

Confirmation is denied.