RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0112P (6th Cir.)
File Name: 02a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: EAGLE-PICHER
INDUSTRIES, INC., et al.,

              *Debtors.*

_____

MAYOR AND CITY COUNCIL
OF BALTIMORE, MARYLAND,

              *Appellant,*

      *v.*

STATE OF WEST VIRGINIA,
MICHIGAN SCHOOL CLASS
ACTION, COUNTY OF WAYNE,
MICHIGAN, and B.C. HYDRO
& ELECTRIC,

              *Appellees.*

No. 00-4469

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00135—Herman J. Weber, District Judge.

Argued: January 23, 2002

Decided and Filed: April 4, 2002

1

Before:  BOGGS and MOORE, Circuit Judges; RUSSELL, District Judge.*

_____

**COUNSEL**

**ARGUED:**  Carl E. Tuerk, Jr., COOPER & TUERK, Baltimore, Maryland, for Appellant.  Philip J. Goodman, Birmingham, Michigan, for Appellees. **ON BRIEF:** Carl E. Tuerk, Jr., COOPER & TUERK, Baltimore, Maryland, Fredric Francis Tilton, Cincinnati, Ohio,  Stanley J. Levy, LEVY, PHILLIPS & KONIGSBERG, LLP, New York, New York, for Appellant.  Philip J. Goodman, Birmingham, Michigan, Edward B. Cottingham, Jr., NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, Mt. Pleasant, South Carolina, for Appellees.

_____

**OPINION**

_____

RUSSELL, District Judge.  This is an appeal from a bankruptcy court order granting Appellees West Virginia, *et al.*, preferred status in the disposition of a settlement trust corpus funded by Debtor Eagle-Picher Industries, Inc., despite Appellees' failure to comply fully with a mandatory notification provision. While Appellees were required to give notice to three entities as a prerequisite to preferred status, they only notified two of the three.  Notwithstanding this failure, the bankruptcy court determined that Appellees were entitled to preferred status in the trust dispensation because they had substantially complied with the notice requirements. Because we agree with the bankruptcy court that substantial compliance can operate to obviate the need for a deadline extension and because we see no abuse of discretion in the

---

\* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

**CONCLUSION**

The substantial compliance doctrine can properly be applied to find timeliness despite technical noncompliance. This remains true in situations where a deadline extension would be subject to Bankr. R. 9006(b)'s requirement of "excusable neglect." Furthermore, the bankruptcy court did not abuse its discretion in applying the doctrine to the present case. For these reasons, the judgment of the bankruptcy court is AFFIRMED.

bankruptcy court's application of the doctrine in the present case, we AFFIRM.

**BACKGROUND**

In 1991, Eagle-Picher Industries, Inc. filed for Chapter 11 bankruptcy. A plan of reorganization was confirmed on November 18, 1996. The plan provided for the creation of a Settlement Trust to be funded by Eagle-Picher in the amount of $3 million. All damages claims against Eagle-Picher resulting from asbestos installation were to be paid out of this Settlement Trust.

After the plan confirmation, several disputes arose regarding the dispensation of the $3 million. The claimants eventually agreed upon a multi-tiered scheme, which they memorialized as a "Stipulation for Treatment of Property Damage Claims." (*See* J.A. #17, pp. 209-213.) The bankruptcy court approved this proposal on May 7, 1999. (*See* J.A. #16, pp. 166-68.) Under the claimants' framework, the balance of the Settlement Trust, after fees and expenses, would be divided into two separate funds, Tier I Product ID Claimants and Tier II Non-Product ID Claimants. The Tier I fund was to receive two-thirds of the available funds for distribution (approximately $2 million), while the Tier II fund was to receive one-third (approximately $1 million).

Access to Tier I funds was limited to parties whose claims were based on damages from Debtor's asbestos-containing building materials and who had already filed a timely Proof of Claim. (J.A. #17, p. 209, ¶ 5.) The Stipulation provided that a claimant seeking payment under Tier I

must serve written notice of its intention to have its claim treated as a Tier I Product-ID Claim hereunder on the Committee [of Property Damage Claimants], NAAG [National Association of Attorneys General],[1] and the Property Damage Claims Administrator (the "PDCA"...)

[1]The NAAG was Trustee for the Settlement Trust.

so that it is actually received by no later than one month after the date of the court's approval of this Stipulation. Any Claimant not giving such written notice shall automatically, and without further action by the claimant, have their claim treated as a Tier II Non-Product ID claim hereunder.

(J.A. #17, pp. 210, ¶ 7 (footnote added).)

Only two claimants, the Mayor and City Council of Baltimore ("Baltimore") and the Cincinnati School District ("Cincinnati") fully complied with this portion of the stipulation by providing written notice to the Committee, NAAG, and the PDCA on or before the June 7, 1999 deadline. Appellees state that six of eight claimants, or 75% of all claimants seeking Tier I status made the same technical error of failing to provide written notice to the PDCA. Appellant disputes this assessment, and argue that only the four Appellees made the error.[2]

Two and a half months after the bankruptcy court's order, on August 23, 1999, Appellees filed a motion entitled "Motion for Waiver or Modification of Deadline to File Statement of Intent with the Property Damage Claims Administrator." (*See* J.A. #15, p.158-165.)  In that motion, Appellees stated that they had substantially complied[3] with the order by filing with the NAAG and the Committee, that the PDCA had actual notice before he mailed the Tier I claim

---

[2] Appellant submits that one potential Tier I claimant withdrew its attempt to claim Tier I status and another failed to notify the PDCA along with Appellees but did not join in Appellees motion.

[3] In general, substantial compliance means that a party has "[c]ompli[ed] with the essential requirements, whether of a contract or of a statute."  Black's Law Dictionary 1428 (6th ed. 1991).  In the life insurance context, this court has interpreted the rule to mean that "if the insured has done everything reasonably possible to effect a change in beneficiary, a court of equity will decree that to be done which ought to be done."  *Cooper v. United States*, 340 F.2d 845, 848 (6th Cir. 1965); *accord Aetna Life Ins. Co. v. Hayes*, 324 F.2d 759, 761 (6th Cir. 1963).

---

The court next determined that there had been no prejudice to either the PDCA or Baltimore and Cincinnati, as the former had expressly disclaimed prejudice and the ability of the latter pair to assert a claim and seek recovery had not been harmed. (*Id.* at 37-38.)  Third, the bankruptcy court held that there had been justifiable excuse for Appellees' failure to serve properly.  (*Id.* at 38.)  In reaching this conclusion, the court reasoned that the Appellees' proffered excuse – that their failure to serve the PDCA was based upon a misunderstanding that the NAAG was coordinating notice to the third party – seemed reasonable in light of the number of movants under the same impression. (*Id.*)  Further, the court opined, Appellees did not simply sit on their rights, but had instead submitted the statement of intent to two of the three required parties. (*Id.*)  Analyzing the fourth factor, the court determined that Appellees would suffer severe prejudice from denial of their motion, reasoning that Appellees' recovery would be substantially reduced by their relegation to Tier II status. (*Id.* at 38-39.)

Evaluating the facts at hand, we can find no abuse of discretion by the bankruptcy court in applying the substantial compliance doctrine.  Appellees presented evidence that the PDCA received notice of Appellees' intent to seek Tier I status before he distributed any claims forms.  The PDCA also expressly disclaimed any prejudice from Appellees' failure to strictly comply with the Order.  Further, if Baltimore and Cincinnati suffered any prejudice at all from the court's allowance of Appellees' Tier I claim, it was their loss of a windfall.  Such a windfall merits no protection.  Moreover, the appellees indicated a clear intention to seek Tier I status by sending notice to two of the three required entities, and at least twice as many claimants failed to notify the PDCA as actually did notify the PDCA.  Finally, Appellees' recovery would be greatly reduced if their error relegated them to Tier II status.

bankruptcy court's decision to apply it must be reviewed for an abuse of discretion. *In re Waterman*, 227 F.3d at 607; *see also McMath*, 206 F.3d at 828 ("Courts have discretion to employ the equitable doctrine of substantial compliance.").

> An abuse of discretion is defined as a "definite and firm conviction that the [court below] committed a clear error of judgment." *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir.1999); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996). The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion. *See Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir.1982); *see also In re Carter*, 100 B.R. 123, 126 (Bankr. D. Me.1989).

*In re Waterman*, 227 F.3d at 607-08 (alteration in original).

In concluding that Appellees had substantially complied with the Order's notice provision, the bankruptcy court relied upon Appellees' satisfaction of four factors: "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." (J.A. #9, p. 36 (quoting *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984).)[8]

The bankruptcy court found that the first element had been met, since the Committee and NAAG received written notice from Appellees and the PDCA had actual notice. (*Id.* at 37.)

---

[8]Because Baltimore does not challenge the bankruptcy court's formulation of the substantial compliance test, we assume without deciding that this approach was correct. *See Dorris v. Absher*, 179 F.3d 420, 425-26 (6th Cir. 1999) (issue not raised in briefs considered waived unless "exceptional case" exists where court of appeals's failure to address argument would result in a miscarriage of justice).

forms, and that no prejudice had ensued. Appellees argued that due to inadvertence or misunderstanding, the notices of intention were not filed with the PDCA. Appellees stated that they believed that the NAAG was coordinating the statements and would make any necessary additional filings on behalf of the claimants. They requested that the deadline be waived or modified to allow for an additional ten days to file such notice.

On September 9, 1999, Baltimore filed its opposition to the Appellees' Motion for Waiver or Modification. (*See* J.A. #14, pp.129-157.) Baltimore argued that Appellees' motion was governed by Bankr. R. 9006(b)(1), which allows for post-deadline enlargement of time where the failure to act was the result of excusable neglect. Appellant maintained that Appellees had failed to comply with Rule 9006(b)(1) because they never claimed or established that their failures were the result of excusable neglect. Baltimore also asserted that substantial prejudice would result to the claimants who timely filed because granting the motion would expand the number of qualifying participants in the Tier I division. Baltimore also argued that the PDCA would have to receive, review, assess, and consider a greater number of claims.

The Cincinnati School District also filed a Memorandum in Opposition on September 9. (*See* J.A. #13, pp. 126-28.) Cincinnati expressed concern about the numerous other potential claimants who also failed to comply with the notification requirements and would also argue that the bankruptcy court's requirements should be waived. Cincinnati further pointed to the court's previous refusal of its requests to modify or waive deadlines.[4]

Two appellees, Michigan Schools and the County of Wayne, replied to Baltimore and Cincinnati's filings (*see* J.A. #11, pp. 105-21), stating that they "honestly believed that they

---

[4]While both Baltimore and Cincinnati filed timely notice to the PDCA and opposed Appellees' motion in the bankruptcy court, only Baltimore appealed the bankruptcy court's decision.

had already fulfilled their obligation to give notice of their intent to file Tier I claims by having previously signed and sent the 'Claims Questionnaire' provided by NAAG months before the filing deadline subsequently established by the Court." (J.A. #11, p. 107.)[5] They argued that the claimants who had timely filed "will suffer no prejudice by losing the unexpected opportunity to enhance the value of their claims at the expense of those claimants who have worked long and hard to assemble the product identification evidence necessary to support Tier I claims." (J.A. #11, p. 109.) In further support of their Motion, Appellees submitted two letters from the PDCA. In the first letter, dated August 10, 1999, the PDCA stated that he had received copies of the documents filed with the NAAG in which claimants expressed their intention of seeking Tier I status. In the second, which was dated August 25, 1999, the PDCA stated his intention not to oppose the Motion for Waiver or Modification of the Deadline.

The bankruptcy court, Perlman, J., issued a decision and order on January 7, 2000, in which it allowed Appellees to seek Tier I status. (*See* J.A. #9, pp. 33-41.) In so doing, the court "f[ound] that movants have not sought relief from this court under an excusable neglect standard as has been suggested by the opposition. Instead, they have presented arguments under a substantial compliance theory, and it is on that basis that this court has considered the matter." (*Id.* at 35.) Noting that the Stipulation's notice provision was not intended to benefit other Tier I claimants, the court found that the only parties who could be prejudiced were the three parties receiving notice and that the PDCA had expressly disclaimed any prejudice. The court also acknowledged that all parties knew that the Appellees had property damage claims against the Debtor. Because of the number of parties making the same mistake, the bankruptcy court found it

---

[5] The PDCA and one member of the Committee also submitted a Response in support of the Appellees' Motion, which criticized Baltimore and Cincinnati's argument as "elevat[ing] form over substance." (*See* J.A. #12, pp. 122-23.)

strict compliance with...technical requirements." *Sherer v. Construccione Aeronauticas, S.A.*, 987 F.2d 1246, 1248 (6th Cir. 1993) (citing *Velidor v. L/P/G Benghazi*, 653 F.2d 812 (3rd Cir.1981)) (discussing the notice provisions in the Foreign Sovereign Immunities Act); *see also Straub v. A. P. Green, Inc.*, 38 F.3d 448 (9th Cir. 1994) (substantial compliance with FSIA service of process requirements achieved by actual notice and lack of prejudice).

11 U.S.C. § 105(a) gives a bankruptcy court broad equitable power to "prevent an abuse of process," and there is no reason why these equitable powers would not include making a finding of substantial compliance where such a finding would prevent the need for a Rule 9006(b) excusable neglect analysis. *Cf. Sherer, supra* (substantial compliance test appropriate for service of foreign sovereigns even though relevant statute was clear in its requirements and made no mention of substantial compliance). As this court has previously noted, "bankruptcy law, perhaps more than any other legal field, recognizes that people will make mistakes and need not be penalized for every error." *Bittel v. Yomato Int'l Corp.*, 70 F.3d 1271 (table), 1995 WL 699672, at *3 n.6 (6th Cir. Nov. 27, 1995); *accord In re Riggan*, 102 B.R. 677, 679 (Bankr. W.D. Tenn. 1989) ("Reliance on the Bankruptcy Code, chapter and verse, is laudable, but statutory detail should never obscure fair and equitable principles."). Accordingly, we hold that substantial compliance can be properly applied to find deadline compliance in situations where a deadline extension would be permissible only by the "excusable neglect" standard of Bankr. R. 9006(b).

## II.

Having concluded that substantial compliance is not categorically inapplicable to situations like the present one, we now turn to the bankruptcy court's decision to apply the doctrine in Appellees' favor. The substantial compliance rule is an equitable doctrine, *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 827 (9th Cir. 2000)*, see Aetna Life Ins. Co. v. Hayes*, 324 F.3d 759, 761 (6th Cir. 1963), so the

In the second case, *Margraf v. Oliver (In re Oliver)*, 28 B.R. 420 (Bankr. S.D. Ohio 1983), the bankruptcy court sent Notice to all creditors of Debtors' Petition and proposed Plan, which included notification of an August 4, 1981 confirmation hearing. *Id.* at 422. This Notice also provided that "Complaints objecting to confirmation shall be filed...at least five -5- [days] before the confirmation hearing." *Id.* One creditor filed a Complaint on August 3, a mere day before the hearing. *Id.* In response to Debtors' request to dismiss the Complaint, the creditor alleged good faith attempt to comply with the court's procedure and substantial compliance with the deadline. *Id.* The creditor claimed that he was unable to complete the Complaint until August 3. *Id.* Initially noting that the Complaint was unquestionably late, the court nonetheless found that the creditor had substantially complied with the Order and that this substantial compliance justified extending the deadline for excusable neglect. *Id.* at 423.[7]

These two cases illustrate that the substantial compliance doctrine is not incompatible with the excusable neglect standard for deadline extension. Although neither case held that the substantial compliance doctrine could be used to obviate the need for a Rule 9006(b) time extension, both employed notions of substantial compliance within the framework of Rule 9006(b)'s excusable neglect standard. With post-deadline substantial compliance available as a consideration in the Rule 9006(b) calculus, it is not inconceivable that pre-deadline substantial compliance could also be available to avoid the calculus altogether.

Additionally, the Stipulation's filing requirement was a notice provision. When dealing with notice provisions, courts have recognized that "actual notice [is] more important than

---

[7] A third relevant case, *In re Riggan*, 102 B.R. 677 (Bankr. W.D. Tenn. 1989), held that Fed. R. Civ. P. 60(b) relief based upon "mistake, inadvertence, surprise, or excusable neglect" was justified where debtor had substantially complied with filing requirement despite misnaming answer and misfiling it under the general case number.

reasonable to believe that some type of misunderstanding was present. The court concluded that the Appellees' submission of their statements of intent constituted substantial compliance with the notice provision, using the four-factor test of *Borzeka v. Heckler*, 739 F.2d 444 (9th Cir. 1984).

After briefing and without a hearing, the United States District Court for the Southern District of Ohio, Weber, J., affirmed the bankruptcy court's ruling. (*See* R. 9, pp. 10-19.)

## DISCUSSION

In a bankruptcy appeal, the Court of Appeals "review[s] the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2001). The bankruptcy court's factual findings are examined for clear error (i.e., "the most cogent evidence of mistake of justice"), while all conclusions of law are reviewed de novo. *Id.* (bankruptcy court's conclusions of law reviewed de novo); *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Financial Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) (district court's conclusions of law reviewed de novo). Mixed questions of law and fact must be separated into their constituent parts and each analyzed using the appropriate standard of review. *In re Baker & Getty*, 106 F.3d at 1259. Finally, the bankruptcy court's equitable determinations are reviewed for an abuse of discretion. *In re Waterman*, 227 F.3d at 607; *Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, 270 F.3d 280, 289 (6th Cir. 2001).

## I.

Baltimore attempts to portray the lower courts' use of the "substantial compliance" doctrine as a substitute for Bankr. R. 9006(b)(1)'s "excusable neglect" requirement. This characterization represents a misunderstanding of both terms' usage in this case. The bankruptcy court held that Appellees' substantial compliance with the notice provision made their Tier I election timely, not that Appellees' substantial

compliance with the provision justified an extension of time. Thus, according to the court, Appellees timely complied, making a deadline extension and a resort to Rule 9006(b) (excusable neglect) unnecessary.

Correspondingly, the appropriate inquiry is whether the substantial compliance doctrine can be applicable to the Stipulation's notice requirement, or whether strict compliance is required. This evaluation of substantial compliance's general applicability is a question of law that is reviewed de novo. *See In re Waterman*, 227 F.3d at 607; *In re Baker & Getty*, 106 F.3d at 1259.

Appellant Baltimore argues that Bankruptcy Rule 9006(b)(1) prevents the use of the equitable substantial compliance doctrine. In pertinent part, that rule states:

(b) Enlargement

(1) In general

[W]hen an act is required or allowed to be done at or within a specified period...by order of the court, the court for cause shown may at any time in its discretion...(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Bankr. R. 9006. Appellant insists that the rule permits deviation from the June 7 deadline only for movant's "excusable neglect."

Rule 9006(b), however, applies only to the enlargement of time. Here, the bankruptcy court did not enlarge Appellees' time to file, but instead determined that they had already timely filed. Indeed, Appellees submitted no filing after the

deadline.[6] Consequently, the text of Rule 9006(b) poses no obstacle to the use of the substantial compliance doctrine. The text provides no reason why the substantial compliance doctrine should be categorically inapplicable in situations where the rule's "excusable neglect" standard governs deadline extensions. Entirely different are the arguments (1) that Rule 9006(b)'s "excusable neglect" standard prevents deadline extension based upon substantial compliance, and (2) that Rule 9006(b) prevents equity from ever finding deadline compliance despite technical noncompliance.

Although the court is unaware of any previous case applying the substantial compliance doctrine to avoid deadline extension issues, two bankruptcy cases within this circuit have discussed the doctrine in the context of parties seeking extensions. In *In re Velker*, 145 B.R. 30 (Bankr. N.D. Ohio 1992), the bankruptcy court approved Debtor's reorganization plan pending a legal description by June 18, 1992. *Id.* at 31. After Debtor was given an extension until July 12, 1992, she still missed the description deadline and her bankruptcy petition was dismissed for want of prosecution. *Id.* Debtor filed a Motion to Reconsider on July 23, 1992 that contained the requisite description. *Id.* At an August 10, 1992 hearing on Debtor's Motion, Debtor's representative informed the court for the first time that Debtor had submitted the legal description to the Trustee on July 20, eight days after the filing deadline, and claimed that this action constituted substantial compliance with the deadline, which made the failure to act one of "excusable neglect." *See id.* at 31-32. The bankruptcy court refused to find excusable neglect, noting that the Debtor never provided any justification for her admittedly tardy filing. *Id.* at 32.

_____

[6]Although Appellees' Motion was styled "Motion for Waiver or Modification of Deadline to File Statement of Intent with the Property Damage Claims Administrator," Appellees' substantive argument was that they had substantially complied with the deadline. (*See* J.A. #15, 158-65.) Additionally, the bankruptcy court ruled that the Appellees had already complied with the order, and the court did not waive, modify, or extend the deadline. (*See* J.A. #9, pp. 33-41.)